BOSTON AND PROVIDENCE RAILROAD CORPORATION
& another *vs.* WILLIAM DOHERTY.

Suffolk.   March 27, 1891. — September 2, 1891.

Present: ALLEN, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Railroad — Private Crossing — Right of Way — Extinguishment of Easement
License.*

Since the St. of 1874, c. 372, § 81, (Pub. Sts. c. 112, § 113,) a structure, by which a
landowner whose lands have been appropriated by a railroad company may
conveniently cross the tracks at the same grade, or over or under the same,
may be ordered, if the county commissioners judge it reasonable for his security
and benefit.

An easement may be extinguished, revoked, or modified by a parol license granted
by the owner of the dominant tenement, and executed by the owner of the ser-
vient tenement.

If a parol license- is to do that upon the licensee's own land which prevents the
further enjoyment by the licensor of an easement in the land, such a license
when executed is irrevocable, and the effect of it is to extinguish the easement.

On the issue whether a right of way across the plaintiff's railroad tracks en-
joyed by the defendant had been extinguished by his license to the plaintiff to
close up the way conditioned upon another suitable way being furnished to the
defendant, which condition the plaintiff had performed, the plaintiff, against
the defendant's objection, offered evidence that, on account of the great increase
of the plaintiff's business the condition of affairs had become such that it was
not safe for the operation of the road to continue such way; and that addi-
tional accommodations, which, if built on the plaintiff's land, would necessarily
extend across and close up the way, were absolutely necessary for the accom-
modation of the travelling public.  *Held*, that the evidence was properly
admitted.

BILL IN EQUITY, filed in the Superior Court, to declare void
an order of the county commissioners directing the first named
plaintiff to maintain a private crossing over its railroad, and to
prevent the defendant from using the same as a means of access
to his land.   Hearing before *Dewey*, J., who reported the case
for the determination of this court, in substance as follows.

In 1849, the Boston and Providence Railroad Corporation,
located its railroad over a parcel of land in Roxbury belong-
ing to Mary White, and in the same year the county commis-
sioners, in assessing her damages, ordered the corporation to
" make and forever maintain a cart and carriageway across their
railroad " for the use of said White, " her heirs and assigns, in

the access to and use of her remaining lands adjoining the part taken by the railroad." The corporation carried out this order of the county commissioners by making and maintaining the way, and White and those claiming under her used the same. On April 7, 1888, the Boston and Providence Railroad Corporation leased and delivered possession of its property to the Old Colony Railroad Company, which was the other plaintiff, but before possession was taken under this lease, the defendant, one Meserve, and two others had each secured title to a portion of the land of White, and had exercised the right to cross the tracks by the way in question. The plaintiffs were permitted to introduce evidence, subject to the defendant's exception, that, at the time possession was taken under this lease, the travel and business upon the railroad had largely increased, so that it was not safe for the operation of the road to use the way across the track; and that additional accommodations, which, if built on the plaintiffs' land, would necessarily extend across and close up the way, were absolutely necessary for the accommodation of the travelling public. The lessor corporation just before the transfer of its property was arranging to construct such additional accommodations, and on April 2, 1888, its engineer, who was in charge of the matter, and who continued in charge of it for the lessee company, had an interview with Meserve, and told him that the lessor corporation would like to do away with the crossing, and offered in its behalf to buy a strip of land leading from the defendant's premises to a public way which was not laid out when the railroad was located, and to put it in order for travel as a substituted way, and to convey it to the defendant and those interested in the way in question in exchange therefor. Meserve at the engineer's request immediately communicated to the defendant the terms of the offer, and the defendant and the others interested assented to the proposal. The strip of land was then put in order for travel, and a conveyance of the new way executed to the defendant and those interested in the old way, which was delivered and recorded by Meserve, but not afterwards accepted by the defendant. The new way was opened for the use of the parties on April 17, 1888, and was used by them, including the defendant. Meanwhile, and before April 17, the lessee company, without objection from the defendant,

had been making the necessary changes and improvements in its premises, and in so doing had destroyed a bridge which was a part of said crossing, built a fence on the line of the location across the old way, and otherwise interrupted, obstructed, and closed the crossing, leaving no access to the premises of the defendant from any public street, except across the land of others, until the new way was opened. Some time between April 20 and 25 of the same month, the defendant told Meserve that he did not like the new way, and refused to release his rights in the crossing. On July 12, 1888, the defendant brought an action of tort against the lessee company, to recover damages caused for obstructing and closing the way in question, which action is still pending.

The case was argued at the bar in March, 1891, and afterwards, in September, 1891, was submitted on the briefs to all the judges except *Field*, C. J. and *Holmes*, J.

*J. H. Benton, Jr.*, for the plaintiffs.

*C. W. Turner*, for the defendant.

KNOWLTON, J. Under the order of the county commissioners the defendant had a right of way across the plaintiff's tracks. Since the enactment of the St. of 1841, c. 125, § 1, which is now § 113 of the Pub. Sts. c. 112, the county commissioners have had authority, at the time of estimating damages to landowners for the appropriation of their lands by a railroad company, to order the corporation to construct and maintain such embankments, culverts, walls, fences, or other structures as they judge reasonable for the security and benefit of such owners. Without a right to cross the railroad, a landowner might be entirely cut off from access to a valuable portion of his estate, and there can be no doubt that, under this section, a structure on which the owner may conveniently cross under the track or over it, or on the same grade with it, may be ordered, if the commissioners judge it reasonable for his security and benefit. This has been the practical construction of the statute all over the Commonwealth for nearly forty years, and it has been assumed by the court to be correct. *White* v. *Boston & Providence Railroad*, 6 Cush. 420. *Keith* v. *Cheshire Railroad*, 1 Gray, 614. *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass. 1. *Gay* v. *Boston & Albany Railroad*, 141 Mass. 407, 408.

The important question in the case is whether the defendant's easement was extinguished by his license to the plaintiff to close up the way, and by the execution of this license. By the evidence which was introduced, subject to the defendant's exception, it appeared, among other things, that on account of the great increase of the plaintiff's business the condition of affairs had become such " that it was not safe for the operation of the road to continue the way claimed by the defendant and others across the track." We think this evidence was competent, as showing the relation of the easement to the property of each of the parties, and to the uses that could be made of it, and as bearing upon the construction which the court should put upon the defendant's acts in reference to the easement. It is a well established rule of law that an easement may be extinguished, renounced, or modified by a parol license granted by the owner of the dominant tenement, and executed by the owner of the servient tenement. *Dyer* v. *Sanford,* 9 Met. 395. *Morse* v. *Copeland,* 2 Gray, 302. *Curtis* v. *Noonan,* 10 Allen, 406. *Canny* v. *Andrews,* 123 Mass. 155. *King* v. *Murphy,* 140 Mass. 254. One cannot acquire an interest in the land of another by executing a parol license from the owner to occupy or use it, for such a license is revocable. But if the license is to do that upon the licensee's own land which prevents the further enjoyment by the licensor of an easement in the land, such a license, when executed, is irrevocable, and the effect of it is to extinguish the easement.

An easement may be lost by abandonment; and whether there is an abandonment is ordinarily a question of intention. If the extinguishment of an easement by the execution by the owner of the servient estate of a license which prevents the further enjoyment of the easement rests on the ground that the owner of the easement intentionally abandons it, — and where there is a complete extinguishment it may well rest upon that ground, — his intention is conclusively presumed in favor of the owner of the servient tenement who executed the license, because between these parties, when one acts upon the license of the other, the manifest and apparent intention which is acted upon must control their rights, whatever the secret intention of the licensor may be.

In the present case, the defendant licensed the plaintiff to obstruct and cut off his way on condition that it would provide him another designated way as a substitute therefor. He must have expected that the execution of the license and the performance of the condition would deprive him of his old way and leave him with a new one. His knowledge of the facts put in evidence, against his objection, shows that he must have understood that he could not longer use the old way after his license was executed. His license was conditional, and his rights were protected by the condition. The plaintiff performed the condition, and in execution of the license made the necessary changes and improvements on its premises, " destroyed a bridge, part of said crossing, built a fence on the line of the location across the old way, and otherwise interrupted, obstructed, and closed the crossing " several days before the defendant made any objection, or expressed any dissatisfaction with the arrangement which he had made.

We are of opinion that the performance of the condition, and the execution of the license, worked an extinguishment of the defendant's easement. As against the plaintiff, he must be conclusively presumed to have intended to abandon his easement on the performance of the condition when he gave the license; and the license having been acted upon, and being irrevocable, the abandonment became complete.     *Injunction to be granted.*