WALTER A. PATTERSON, trustee, *vs.* GEORGE H. PENDEXTER & another.

Essex. November 17, 1926. — May 20, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Trust*, Of personal property, Following trust property. *Probate Court*, Findings by judge. *Laches*. *Evidence*, Presumptions and burden of proof.

A decree and order, by a judge who heard a petition in a probate court by a trustee under a will for instructions as to whether he should deliver certain Liberty bonds, found in the effects of the testator, to the testator's father as the property of the father, that such delivery should be made, was *held* to have been warranted by facts found by the judge.

The question of laches generally is one of fact; and the mere facts, that the bonds above described were purchased by the father during the World War, were left with the testator, no coupons being detached by the father, that after the proof of the will in 1921 the father assented to a final account by the executor of the son's will and the first account by the trustee, petitioner, in both of which was shown an amount of Liberty bonds exceeding those claimed by the father, and that a period of four or five years elapsed after the allowance of the will before the father

made his claim, did not require a finding of laches as a matter of law where there was nothing to indicate that the trustee had repudiated the claim of the father to the bonds.

Upon the record in the suit above described, it was *held*, that it must be presumed that the judge found that the bonds of the father were among those in the safe deposit box of the testator at the time of his death and that such an inference was justifiable in view of all the facts.

PETITION for instructions, filed in the Probate Court for the county of Essex on November 30, 1925, and afterwards amended, by the trustee under the will of George F. Pendexter, late of Hamilton.

The petition was heard by *Dow*, J., by whose order there was entered a decree instructing the petitioner as to certain payments to the father of the testator for his support, comfort and welfare, and also directing that the Liberty bonds described in the opinion be delivered to him.

Material facts found by the judge are described in the opinion. There was no report of the evidence. Trustees of Gloucester Lodge No. 892 Benevolent and Protective Order of Elks, beneficiary under the will, appealed from that part of the decree relating to the Liberty bonds.

*C. W. Wonson*, for the defendant Trustees of Gloucester Lodge No. 892 Benevolent and Protective Order of Elks.

There was no other argument or brief.

RUGG, C.J. This is a petition for instructions by the trustee under a will. The only point now in controversy relates to certain Liberty bonds. It is contended by the father of the testator, one of the respondents, that the testator held in trust for him certain Liberty bonds. It appears that the will was proved and allowed on the twentieth day of October, 1921. In the Probate Court a decree was entered to the effect that the testator at the time of his death had in his possession Liberty bonds belonging to his father, which have come into the possession of the petitioner, of the par value of $600, and that the petitioner be authorized to deliver them to the father. The appeal of the residuary legatee brings the case here. Report of material facts found by the judge was filed. G. L. c. 215, § 11. The final account of the petitioner as executor of the will of the testator

showed, as allowed by the court and assented to by the father, that the balance of personal property after settling the estate had been transferred and delivered to himself as trustee under the will. Included in this property were Liberty bonds valued at $1,140.83. The father during the World War purchased Liberty bonds of the par value of $600, which were subscribed for and delivered to him through his employer. These bonds the father placed in an unmarked envelope in the safe of the testator for safe keeping and thereafter took no coupons from them. They remained in the custody of the testator until his death. No Liberty bonds were found in the safe of the testator after his death, but such bonds of the value of $1,140.80, not marked in any manner to indicate ownership, were found in his safe deposit box in a bank. From these bonds all coupons except those of recent date had been cut. Among them were bonds of the same denomination as those placed in the safe of the testator by his father. The petitioner's first account as trustee, also assented to by the father, shows that he holds as part of the trust fund Liberty bonds and stamps of a value in excess of $1,000. At his death the testator owed his father $2,600, which has been paid by the executor. Testimony by the father, that at the time of this payment he spoke to the petitioner about his bonds, was not contradicted.

The evidence is not reported. Therefore, under the familiar rule, these findings of fact must be accepted as true and final. The question is whether under the pleadings the decree lawfully could have been entered on the facts found. *First Baptist Society in Brookfield* v. *Dexter,* 193 Mass. 187, 189. *Briggs* v. *Sanford,* 219 Mass. 572, 573. *Commissioner of Banks in re Cosmopolitan Trust Co.* 249 Mass. 144, 147.

It rightly has not been argued that the decree is not within the scope of the issues raised by the pleadings.

The argument that it is dangerous and against public policy to permit the decree to stand is not impressive. Whether the father actually placed in the possession of the testator specific bonds, later found in the safe deposit box of the latter, was a question of fact dependent upon the credibility of witnesses. That is a matter for the trial judge,

who saw the witnesses, observed their manner of testifying as well as the words spoken by them, and was able to decide far better than can any one else whether they were telling the truth and what weight ought to be attributed to their testimony.  *Lindsey* v. *Bird,* 193 Mass. 200, 202.

Laches is generally a question of fact.  The decree imports a finding of all subsidiary facts necessary to support it.  This includes a finding that the father has not been guilty of laches.  The mere lapse of a period of four or five years after the allowance of the will, without anything to indicate resulting harm to anybody, does not as matter of law constitute laches sufficient to overcome a finding of fact to the contrary based on unreported evidence.  No time appears to have been fixed for the return of the bonds by agreement between the testator and his father.  Seemingly there has never been any repudiation of the trust.  In any event, there is nothing to indicate that such repudiation has been brought to the notice of the father.  *McGuire* v. *Devlin,* 158 Mass. 63, 67.  *Pearson* v. *Treadwell,* 179 Mass. 462, 467.  *Potter* v. *Kimball,* 186 Mass. 120, 122.  *Manning* v. *Mulrey,* 192 Mass. 547, 550, 551.  *A. Blum Jr.'s Sons* v. *Whipple,* 194 Mass. 253.  *Stewart* v. *Finkelstone,* 206 Mass. 28, 35, 36.  *New York Central Railroad* v. *Ayer,* 239 Mass. 70, 77, 78.  *Porter* v. *Spring,* 250 Mass. 83, 87.

Whether the short statute of limitations would bar a proceeding brought directly by the father need not be considered because that question is not raised.

The rule respecting the right to return of specific trust property was recently summarized in *Yesner* v. *Commissioner of Banks,* 252 Mass. 358, 360, 361, in these words: "It was said in *Little* v. *Chadwick,* 151 Mass. 109, 110, 'When trust money becomes so mixed up with the trustee's individual funds that it is impossible to trace and identify it as entering into some specific property, the trust ceases.  The court will go as far as it can in thus tracing and following trust money; but when, as a matter of fact, it cannot be traced, the equitable right of the *cestui que trust* to follow it fails.'  In *Lowe* v. *Jones,* 192 Mass. 94, at page 101 are found these words: ' . . . by the great weight of authority, a trust can-

not be established against the proceeds of trust property which has been disposed of, unless the proceeds can be identified and traced into some specific fund or property. . . . The rule in Massachusetts has always been held, with considerable strictness, to require the identification of the trust property as passing into some other specific property or fund, as distinguished from the general assets of one's estate.' This rule was reiterated in *Hewitt* v. *Hayes,* 205 Mass. 356, 361, 362, and applied against the existence of a trust in *Old Colony Trust Co.* v. *Puritan Motors Corp.* 244 Mass. 259." It was said in *Hewitt* v. *Hayes,* 205 Mass. 356, at page 361, to be settled that "when a trustee deposits in the bank in one fund without any earmark money of his own and money which he holds in trust for another, the beneficiary, though wholly unable to identify his money in the bank, may yet at his election follow the mixed fund which has been thus created by the trustee, and enforce a claim or charge thereon for his indemnity." In view of these established principles, it must be presumed that the judge found that the bonds of the father were among those in the safe deposit box of the testator at the time of his death. Such an inference was justifiable in view of all the facts. The testator, holding the bonds of his father merely for safe keeping, had no right to sell, pledge, appropriate or dispose of them. The deduction might have been drawn from all the circumstances that he had not thus violated his duty. Every presumption of the law in the absence of evidence to the contrary is in favor of innocence and against misconduct. When there is nothing to indicate surreptitious or illegal dealing with the bonds thus held by the testator, the presumption of propriety might be indulged and naturally would prevail. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50, and cases collected. *Eastman Marble Co.* v. *Vermont Marble Co.* 236 Mass. 138, 152. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 336. *Commonwealth* v. *Orler,* 252 Mass. 55, 61, 62, and cases collected. Every argument urged by the residuary legatee has been considered but need not be further discussed.

*Decree affirmed.*